```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

MATTHEW L. GUGLIELMETTI, JR., :
        Petitioner,           :
                              :
        v.                    :    Crim. No. H-90-18 (AHN)
                              :
UNITED STATES OF AMERICA,     :
        Respondent.           :
```

RULING ON MOTION TO VACATE PLEA AND SENTENCE

Petitioner Matthew L. Guglielmetti, Jr., ("Guglielmetti") seeks to vacate his May 1, 1991 racketeering conviction. Guglielmetti pleaded guilty to RICO Conspiracy, in violation of 18 U.S.C. § 1962(d). The court sentenced him to 57 months imprisonment, which he has served. Now, years after his release from custody, he seeks to vacate his conviction and sentence on the basis of Brady v. Maryland, 373 U.S. 83 (1963), which requires the government to provide a defendant with evidence favorable to the defense. As set forth below, his motion [doc # 200] is DENIED.

FACTS

Guglielmetti is a made member of the Patriarca Family of La Cosa Nostra ("LCN"). When indicted, Guglielmetti was allegedly "capo regime" for Rhode Island and Connecticut, and was in charge of all Patriarca Family ("Family") activities in that region.

During an ongoing investigation of the New England LCN, in the summer of 1989 Agents John Connolly ("Connolly") and James Ring ("Ring") of the Boston FBI learned from their long-time

informant, Angelo "Sonny" Mercurio ("Mercurio"), that the Family would be inducting several new members.  See United States v. Salemme, 91 F. Supp. 2d 141, 170 (D. Mass. 1999).  Ring and Connolly recognized that intercepting such a ceremony for the first time would be of immense value in future prosecutions and Congressional hearings, and thus wanted very much to obtain a warrant to bug the ceremony.  Ring, however, did not want to risk revealing Mercurio's status as an informant -- a risk that would be realized if the application for the warrant mentioned either the ceremony or its location, since very few members of the LCN would have had access to such information.  See id. at 171.

To resolve the dilemma, Ring engaged Assistant United States Attorney Diane Kottmyer ("Kottmyer") to seek a warrant to conduct roving electronic surveillance of oral communications at multiple, unidentified locations ("roving bug").  But, in order to obtain a warrant for a roving bug the government was required to submit to the court "a full and complete statement as to why [it] is not practical to specify the place to be bugged."  18 U.S.C. § 2518(11)(a)(1).  So, to obtain the roving bug he wanted, Ring consistently withheld from Kottmyer certain information about the LCN induction ceremony that he and Connolly were receiving from Mercurio -- information that, if he or Connolly disclosed, would have given Kottmyer clear notice that it would be false and misleading for the government to represent that it

was impractical to specify the location to be bugged and that a roving bug was thus necessary.  Thus, because Ring and others withheld that material information, on October 27, 1989 Kottmyer submitted a false and misleading application and affidavit to Judge David S. Nelson of the United States District Court for the District of Massachusetts to obtain a warrant for a roving bug. See Salemme, 91 F. Supp. 2d at 171.

If an honest and accurate application had been filed, it would have revealed that (1) at all times prior to October 29, 1989, the FBI, personified by Ring, knew that there would be at least one informant, Mercurio, at the ceremony; (2) that a roving bug for use at multiple, unidentified locations was sought, rather than one just for 34 Guild Street in order to protect the identities of its sources and that, contrary to what was represented in the roving bug affidavit, the FBI had no intention of using that warrant to intercept conversations more than once or at any location other than 34 Guild Street; and (3) that the FBI had substantial, corroborated information that the ceremony would be held at 11 am at 34 Guild Street in Medford, Massachusetts at least several hours before Kottmyer met with the judge to obtain the roving bug warrant.  See id. at 171

Based on the false and misleading affidavit and application, Judge Nelson authorized the roving bug.  That warrant was used to intercept the LCN induction ceremony at 34 Guild Street on

October 29, 1989.

Thereafter, in March 1990, Guglielmetti and others tied to the Patriarca and Genovese Families were indicted in Connecticut on RICO and other charges.  Other members of the Family were indicted on similar federal charges in Boston.

After his indictment, Guglielmetti filed a number of pre-trial motions, including a motion to suppress the roving bug evidence.  Guglielmetti argued that the evidence should be suppressed for two reasons: (1) the government failed to disclose in its roving bug application to Judge Nelson that it had received prior authorization for surveillance of a number of co-defendants; and (2) the government failed to include in its roving bug application certain information it had obtained regarding the induction ceremony.

At the same time that Guglielmetti filed his suppression motion, Vincent Ferrara ("Ferrara") and co-defendants in the related prosecution in Massachusetts filed a similar motion to suppress the same roving bug evidence.  Judge Mark Wolf of the United States District Court in Boston heard that motion.  Based on the information known to the U.S. Attorney's office and the defendants at that time -- the true extent of the FBI's deception would not be revealed until years later -- Judge Wolf ultimately ruled that, while the government had not made a "full and complete statement" in the roving bug application, the

application was not made in reckless disregard for the truth and that a fully informed judge would still have granted the request. See United States v. Ferrara, 771 F. Supp. 1266, 1273 (D. Mass. 1991).  This court adopted Judge Wolf's order in its entirety and denied Guglielmetti's suppression motion.  See United States v. Bianco, 998 F.2d 1112, 1120 (2d Cir. 1993).

On May 1, 1991, after the multi-defendant trial began in this court, Guglielmetti pleaded guilty to one count of a superseding indictment.  Guglielmetti asserts that he decided to plead guilty after learning that the government would use the LCN induction ceremony tapes at trial.  On July 8, 1991, the court sentenced him to 57 months imprisonment.

Guglielmetti's co-defendants were eventually convicted, and following their conviction, appealed.  See id.  Among their many challenges on appeal was the claim that the roving bug evidence should have been suppressed because the government withheld information regarding the induction ceremony.  The Second Circuit rejected the argument.  See id. at 1125-26.

The question of the validity of the roving bug seemed to be dead until 1998, when the issue resurfaced during the prosecution of alleged LCN associate, Francis Salemme ("Salemme"), in Massachusetts.  In the course of that prosecution, Salemme and co-defendant Robert DeLuca ("DeLuca") moved to suppress various wiretap evidence the government planned to use.  Specifically,

DeLuca, who was present at and participated in the October 29, 1989 induction ceremony at 34 Guild Street, moved to suppress the recordings of that ceremony that were obtained by virtue of the roving bug.

During evidentiary hearings on that motion to suppress, Judge Wolf uncovered the true extent of the FBI's deception.[1] When Judge Wolf's 661-page decision on the motion was issued in 1999, the court observed that the new facts "would present serious questions for the court to resolve if DeLuca had standing to litigate his motion to suppress the electronic surveillance conducted at 34 Guild Street." Salemme, 91 F. Supp. 2d at 172. Judge Wolf held, however, that under Minnesota v. Carter, 525 U.S. 83 (1998), "the bugging of the LCN induction ceremony did not violate DeLuca's Fourth Amendment rights because as a visitor to 34 Guild Street, who did not stay over night, and who engaged in only business discussions, he did not have an expectation of privacy that society would today deem to be justified." Id. Because he did not have an expectation of privacy, Judge Wolf ruled, DeLuca did not have standing to attempt suppression of the evidence. See 18 U.S.C. § 2510(2).

## DISCUSSION

---

[1] The evidence of FBI misconduct uncovered during the Salemme case lead to the 2002 conviction of former Special Agent Connolly on RICO and other offenses. Connolly is currently serving a 10-year sentence in Butner, N.C.

Guglielmetti now claims that the government committed a Brady violation by not providing him with information it had regarding the FBI misconduct in connection with the roving bug application and the taping of the LCN induction ceremony. Guglielmetti claims that by failing to disclose that information, the government rendered his guilty plea not "intelligent," and therefore he is entitled to relief.  See Brady, 397 U.S. 742 ("waivers of constitutional rights (including the right to trial) not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.").  Specifically, Guglielmetti claims that he "would not have pleaded guilty had there been an assurance by court decree that the induction ceremony tape would not have been played at his trial."

There are a number of threshold issues relating to Guglielmetti's motion that must be resolved before addressing the Brady claim.  Namely, whether Guglielmetti's motion is properly before the court (i.e., whether the three requirements for a writ of error coram nobis have been met) and whether his Brady claim is relevant (i.e., whether he has standing to challenge the admission of the induction ceremony recordings).  For the following reasons, the court finds that the three necessary elements for a writ of error coram nobis have been met, but that Guglielmetti has failed to show that, under 18 U.S.C. §

2518(10)(a), he has standing to move to suppress the induction ceremony recordings. Accordingly, Guglielmetti's motion fails as a matter of law, and the court need not reach the merits of his Brady claim.

A. The Elements of Error Coram Nobis

Although Guglielmetti's motion to vacate resembles a challenge under 28 U.S.C. § 2255,[2] the Supreme Court has held that once out of custody, a convict may not challenge his conviction under § 2255, but instead must seek the "extraordinary remedy" of a writ of error coram nobis.[3] See United States v. Morgan, 346 U.S. 502, 511 (1954). Further, "relief under the writ [of error coram nobis] is strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid." Foont v. United States, 93 F.3d 76, 78 (2d Cir. 1996) (internal quotations and alterations omitted).

In error coram nobis proceedings, there is a presumption that the initial proceedings were correct and the burden is on the petitioner to show otherwise. See Morgan, 346 U.S. at 512.

---

[2] 28 U.S.C. § 2255 states: "A prisoner **in custody** under sentence of a court . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." (Emphasis added).

[3] Courts are authorized to grant a writ of error coram nobis under the All Writs Act, 28 U.S.C. § 1651(a), which states: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

To obtain relief under error coram nobis, the petitioner must make a three-part showing: (1) that there are circumstances that compel such action to achieve justice; (2) that there is sound justification for not seeking earlier relief; and (3) that the petitioner still suffers legal consequences from the conviction. See Foont, 93 F.3d at 79.  As set forth below, Guglielmetti satisfies all three elements.

> i. Circumstances That Compel A Writ of Coram Nobis to Achieve Justice

Under the first prong of the error coram nobis analysis, a petitioner must demonstrate an error "of the most fundamental character" which rendered the proceeding itself "irregular and invalid."  Foont, 93 F.3d at 78 (citations and internal quotations omitted).  Further, the error must be such that, but for the error, the result would have been different.  See Durrani v. United States, 294 F. Supp. 2d 204, 212 (D. Conn. 2003) ("The writ [of error coram nobis] is issued 'to correct errors of fact unknown to the court at the time of the judgment, without fault of the defendant, which, if known, would probably have prevented the judgment.'" (quoting Morgan, 346 U.S. at 516)).

Guglielmetti contends that he would not have pleaded guilty "had there been an assurance by court decree that the induction ceremony tape would not have been played at his trial."  While Guglielmetti does not fully develop this argument in his motion,

presumably the logic is that, when the government failed to disclose to Guglielmetti that the FBI intentionally included false and misleading information in the application for the roving bug warrant, the government made an error "of the most fundamental character" which, if corrected, would lead to a different outcome.  Given the extent of the information later revealed during the Salemme case, it is now clear that the roving bug warrant was obtained illegally and that the tapes of the LCN induction ceremony were the product of egregious government misconduct.  See Salemme, 91 F. Supp. 2d at 171.  Because this information was "unknown to the court at the time of judgment, without fault of the defendant," Guglielmetti has made sufficient showing that circumstances compel a writ of error coram nobis to achieve justice.[4]  See Morgan, 346 U.S. at 516.

### ii. Justification For Not Seeking Earlier Relief

The second prong of error coram nobis requires the petitioner to give sound justification for not seeking earlier relief.  While there is no specific statute of limitations for filing a collateral attack on a criminal conviction, the passage of time may bar error coram nobis relief.  See Foont, 93 F.3d at

---

[4] While the court cannot say that Guglielmetti would not have been convicted if the induction ceremony tapes had been suppressed, see Salemme, 91 F. Supp. 2d at 172 (noting the serious questions that would be presented if a challenge to the electronic surveillance at 34 Guild Street were made by someone with standing), due to the unique circumstances presented in this case, the court finds, for the sole purpose of addressing the substantive issue, that Guglielmetti has satisfied the first of the error coram nobis requirements.

79. Typically, in the absence of very good reasons, courts have generally found that delays of more than several years justify dismissal. See Durrani, 294 F. Supp. 2d at 214. The Second Circuit has held that the onus is on the petitioner to demonstrate justifiable reasons for delaying a collateral attack. See Foont, 93 F.3d at 79.

While Guglielmetti gives no specific justification for his delay in filing the present motion, the unique circumstance surrounding the flood of litigation resulting from the misconduct that produced the recordings of the induction ceremony speaks for itself. That is, with new evidence continually being uncovered in related prosecutions, appeals, collateral attacks, etc., it is understandable that Guglielmetti would not bring his motion until he believed all the information supporting his claim was "out on the table."[5] Further, it would be inconsistent to find that Guglielmetti is barred for delaying his motion when courts are contemporaneously issuing rulings on the very issues involved here. See Ferrara v. United States, 384 F. Supp. 2d 384 (D. Mass. 2005) (granting habeas relief to a defendant who was also present at the induction ceremony on the grounds that the government failed to make an essential disclosure in a related

---

[5] Although evidence of FBI misconduct first surfaced in 1998, the litigation relating to the October 1989 induction ceremony recordings was still ongoing when Guglielmetti filed his motion. See Ferrara v. United States, 384 F. Supp. 2d 384 (D. Mass. 2005).

murder case).  Thus, Guglielmetti is justified in not bringing the present motion earlier, and the second element of error coram nobis is satisfied.

### iii. Continuing Legal Consequences

The final prong of error coram nobis analysis requires the petitioner to demonstrate that he suffers continuing legal consequences due to his conviction.  See Foont, 93 F.3d at 79.  To fulfill this requirement, the petitioner must identify a "concrete and serious continuing legal consequence . . . ." Fleming v. United States, 146 F.3d 88, 91 n.3 (2d Cir. 1998).  A heavier penalty on a subsequent conviction and limitations on civil rights are examples of continuing legal consequences of a conviction.  See Morgan, 346 U.S. at 512-13.

In his motion to vacate, Guglielmetti does not mention any continuing legal consequences of his 1991 conviction.  Despite Guglielmetti's failure to address the continuing legal consequences, however, it is clear that such consequences exist: It appears that in 2005, Guglielmetti pleaded guilty in Providence, Rhode Island to conspiracy to possess with intent to distribute and attempting to possess with intent to distribute more than five kilograms of cocaine and that on August 31, 2005, he was sentenced to 136 months imprisonment.  In all likelihood Guglielmetti's 1991 felony conviction affected this sentence.

It is unclear why Guglielmetti did not identify this prosecution and sentence in his motion as an example of a continuing legal consequence, as courts generally regard a heavier penalty on a subsequent conviction to be a continuing legal consequence. See id.  Nonetheless, whatever reason Guglielmetti may have had for failing to mention the criminal proceedings in Rhode Island, that prosecution has come to the attention of this court, and forms a sufficient basis to find that Guglielmetti suffers continuing legal consequences and thus the third prong of the error coram nobis analysis is satisfied.

B.  Standing

Even though Guglielmetti has met the requirements for a writ of error coram nobis, his motion fails substantively because he lacks standing to challenge the circumstances surrounding the issuance of the roving bug and the recording of the LCN induction ceremony at 34 Guild Street.  And without such standing, his Brady claim necessarily fails as well.

With regard to standing, as Judge Wolf found in his 1999 ruling on DeLuca's motion to suppress the induction ceremony recordings, DeLuca did not have standing "because [he was] a visitor to 34 Guild Street, who did not stay over night and who engaged in only business discussions, [and thus] did not have an expectation of privacy that society would today deem to be justified." Salemme, 91 F. Supp. 2d at 172.  Guglielmetti was

presumably also a visitor to 34 Guild Street under the same circumstances as DeLuca.  Thus, because Guglielmetti has failed to present any facts establishing that he had a reasonable expectation of privacy at 34 Guild Street, under 18 U.S. C. § 2518(10)(a) he does not have standing to challenge the circumstances surrounding the taping of the LCN induction ceremony.

      i.   <u>Statutory Framework</u>

18 U.S.C. § 2518(10)(a) states that "any **aggrieved person** in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter or evidence derived therefrom . . ." (emphasis added).  Under 18 U.S.C. § 2510(11), an "aggrieved person" is defined as "a person who was a party to any intercepted wire, **oral**, or electronic **communication** or a person against whom the interception was directed." (emphasis added).  Further, 18 U.S.C. § 2510(2) defines "oral communication" as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception **under circumstances justifying such expectation**." (emphasis added).  The question, then, is whether the circumstances surrounding the induction ceremony at 34 Guild

-14-

Street justified an expectation of privacy.  Judge Wolf, relying on the Supreme Court decision in Minnesota v. Carter, 525 U.S. 83 (1998), found that the circumstances did not justify that expectation.[6]

ii.  Reasonable Expectation of Privacy

In Minnesota v. Carter, a police officer acting on an informant's tip, looked through a window blind of a first floor apartment and observed the defendants bagging cocaine.  Based on the observation, a warrant was issued and the defendants were arrested and charged with conspiracy to commit a controlled substance crime.  The defendants moved to suppress the evidence,

---

[6] A corollary question is what Fourth Amendment law should apply: the law as it stood in 1991 at the time Guglielmetti pleaded guilty, or the law as it stands today.  The court need not address this question, however, because it appears that Guglielmetti lacks standing regardless of which law is applied.

The controlling law in 1991 was Minnesota v. Olson, 495 U.S. 91 (1990).  In Olson, the Court held that the defendant, as an overnight guest, had a reasonable expectation of privacy in his host's home.  The Court held that the expectation was rooted in understandings that were recognized and permitted by society, it was legitimate, and that the defendant could claim protection of the Fourth Amendment.  See id. at 95-96 ("since the decision in Katz v. United States, 389 U.S. 347 (1967), it has been the law that capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.  A subjective expectation of privacy is legitimate if it is one that society is prepared to recognize as 'reasonable.'" (internal citations and quotations omitted)).

Further, the Court in Olson cites its previous ruling in Rakas v. Illinois, 439 U.S. 128 (1978) in which it held that while an overnight guest has a reasonable expectation of privacy "a casual visitor who walks into a house one minute before a search of the house commences and leaves one minute after the search ends would . . . have absolutely no [interest or legitimate expectation of privacy] in the house, and it advances no purpose served by the Fourth Amendment to permit [the visitor] to object to the lawfulness of the search."  Rakas, 439 U.S. at 142.

Thus, while Olson, decided in 1990, is not as explicit as Carter, decided in 1998, Guglielmetti, as merely a visitor to 34 Guild Street who stayed not more than a few hours, lacks standing under either analysis.

contending that the officer's observation was an unreasonable search.  In its analysis of the defendants' expectation of privacy, the Supreme Court noted that "an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not."  Carter, 525 U.S. at 90.  Therefore, the court concluded that, because the defendants were merely visitors to the apartment -- they stayed only for a few hours and had no previous relationship with the apartment lessee -- they had no "legitimate expectation of privacy in the apartment."  Id. at 91.

Judge Wolf found that the participants in the 34 Guild Street LCN induction ceremony were like the cocaine baggers in Carter.  That is, besides Vincent Federico (whose sister owned the house), none of the participants in the induction ceremony had ever been to the house before, none had ever stayed overnight, and none had any reason to be at the house other than to conduct business.  Thus, Judge Wolf was "compelled to find that DeLuca did not at 34 Guild Street have a justified expectation that he would not be intercepted . . . ."  Salemme, 91 F. Supp. 2d at 172.  Based on his conclusion that DeLuca lacked standing, Judge Wolf declined to analyze the merits of DeLuca's motion.  Id.

Like DeLuca, Guglielmetti fails to demonstrate that, post-Carter, he had a reasonable expectation of privacy at 34 Guild

Street that would give him standing to challenge the induction ceremony recordings.  Therefore, Guglielmetti's <u>Brady</u> claim, which forms the crux of the present motion, is essentially moot.  That is, while the government may have improperly failed to disclose evidence favorable to Guglielmetti's motion to suppress, because Guglielmetti did not have standing to bring such a motion under <u>Carter</u>, the government's failure to disclose evidence that he could not have used anyway is irrelevant.  Thus, without a basis for his <u>Brady</u> claim, his present motion must be denied.

<u>CONCLUSION</u>

For the foregoing reasons, Guglielmetti's motion to vacate plea and sentence [doc # 200] is DENIED.

    SO ORDERED this __ day of August, 2006 at Bridgeport, Connecticut.

_____
Alan H. Nevas
United States District Judge